**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARION L. KEEFER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **2:10-cv-537** |
| **v.** | ) | |
| | ) | |
| **JOHN E. POTTER, Postmaster General of** | ) | |
| **the United States Postal Service,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

Presently pending before the Court for disposition is Defendant's MOTION FOR

SUMMARY JUDGMENT (Document No. 23), filed by Defendant John E. Potter, Postmaster

General of the United States Postal Service ("Defendant" or "USPS"), with Brief in Support

(Document No. 24); Defendant's Statement of Material Facts in Support of Motion for

Summary Judgment (Document No. 26); Defendant's Appendix of Exhibits in Support of

Motion for Summary Judgment (Document Nos. 25 and 25-1 through 25-15); Plaintiff's Brief in

Opposition to Defendant's Motion for Summary Judgment filed by Marion L. Keefer

("Plaintiff") (Document No. 35); Plaintiff's Statement of Material Facts in Opposition to

Defendant's Motion for Summary Judgment (Document No. 34); Plaintiff's Counter-Statement

of Material Facts in Opposition to Defendant's Motion for Summary Judgment (Document No.

32); Plaintiff's Appendix in Opposition to Defendant's Motion for Summary Judgment

(Document Nos. 31 and 31-1 through 31-12); Plaintiff's Affidavit (Document No. 30) and;

Defendant's Response to Plaintiff's Statement of Material Facts (Document No. 39). Also

pending is Defendant's MOTION TO STRIKE PLAINTIFF'S AFFIDAVIT IN OPPOSITION

TO SUMMARY JUDGMENT (Document No. 41), with Brief in Support; Defendant's

Supplemental Appendix of Exhibits in Support of Motion for Summary Judgment (Document

Nos. 40 and 40-1 through 40-5); Plaintiff's Amended Affidavit of Marion L. Keefer (Document

No. 43) and; Plaintiff's Brief in Opposition to Defendant's Motion to Strike Plaintiff's Affidavit

in Opposition to Summary Judgment. [1] Accordingly, the issues have been fully briefed, and the

motions are ripe for disposition.

## I.  <u>Statement of the Case</u>[2]

### A.  **Procedural History**

Plaintiff alleges two separate violations of Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e *et seq.* Plaintiff asserts that she was the subject of gender discrimination when

denied a promotion for which she was qualified.  Second, she asserts that USPS denied her the

promotion in retaliation for meeting with Keith Beppler, District Manager at the USPS General

Mail Facility in Pittsburgh, Pennsylvania, to challenge why USPS did not selected her to

participate in an Employment Leadership Development program ("ELD"). (*See* Compl. at ¶ 6;

Pl.'s Br. in Opp'n at 2).  Defendant denies any wrongdoing, and avers that Plaintiff was not

granted the promotion for a legitimate, nondiscriminatory reason; specifically, that Plaintiff was

not the best suited applicant for the promotion.  Defendant further denies that Plaintiff was

denied the promotion in retaliation for her meeting with Beppler.  Unless otherwise indicated, the

following material facts are undisputed.[3]

---

[1] Defendant asks the Court to Strike Plaintiff's Affidavit.  "[S]elf-serving affidavits are typically entitled to

[2] These facts are taken from Defendant's Statement of Material Facts in Support of Motion for Summary
Judgment (Document No. 26), which contains numbered paragraphs and citations to the record in accordance with
Local Rule 56.1(B)(1), Plaintiff's Counter-Statement of Material Facts in Opposition to Defendant's Motion for
Summary Judgment (Document No. 32), which also contains numbered paragraphs and citations to the record, and
Defendant's Response to Plaintiff's Statement of Material Facts.  Plaintiff does not dispute the majority of factual
statements submitted by Defendant.  Likewise, Defendant does not dispute the majority of factual statements
submitted by Plaintiff, rather he disputes Plaintiff's unsupported conclusions.

[3] It must be noted that although Plaintiff denies a number of facts within Defendant's Statement of Material
Facts in Support of Motion for Summary Judgment, many of these denials are simply conclusions without citation to
supporting facts in the record, as required by L.R. 56. *See e.g.* Document No. 34 at ¶¶ 6.c, 9-9.a.v, 9.b.i, 13, 13.g-h,
15.

On April 27, 2010, Plaintiff initiated this civil rights lawsuit pursuant to Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000e *et seq*., by filing a one-count Complaint that avers employment discrimination by Defendant. (*See* Compl. at ¶¶ 9-11). After extensive discovery, Defendant filed the instant Motion for Summary Judgment. Defendant contends that he is entitled to summary judgment because the record evidence simply does not support Plaintiff's allegations that the USPS engaged in any discriminatory conduct as alleged in the Complaint. The motion is now before the Court for determination.

**B.    Factual History**

**1.    Non-selection for EAS level 24 position**

Plaintiff Keefer, a female, has been an employee of the USPS since on February 11, 1989. (Document No. 32 at ¶ 4.1). She has held a number of positions, such as acting supervisor of mail processing,[4] supervisor of mail processing,[5] and Manager of Distribution Operations ("MDO") EAS[6] level 20. (Ex. 2 at ¶¶ 1-2). In September 2009, after the incidents in question, Plaintiff was promoted to EAS level 22 as part of a reduction in force at USPS. (Ex. 2 at ¶ 2). Plaintiff is responsible for the supervision of a number of employees within the Distribution Operations of USPS. (Ex. 2 at ¶ 2). Prior to September 2009, as MDO EAS level 20, Plaintiff reported to Tom Arneson, a Senior MDO, who reported to Thomas A. Graf ("Graf"), the Promotion Selecting Official/Senior MDO EAS 25, who reported to Jeffrey L. Bergen ("Bergen"), the Promotion Concurring Official/Sr. Plant Manager, who reported to Keith Beppler ("Beppler"), the District Manager.[7] (Ex. 2 at ¶ 2).

---

[4] She held this position from February 1990 through October 1993.

[5] She held this position from October 1993 through September 2002.

[6] EAS stands for "Executive and Administrative Schedule."

[7] All those with seniority over Plaintiff are white males.

During her employment with USPS, Plaintiff participated in a number of "details," which temporarily assign employees to higher level jobs in order to facilitate career advancement opportunities. (Ex. 2 at ¶ 2). These positions included Automation Manager of Distribution Operations, Manager of Distribution Operations, Flat Sorter, and Integrated Operation Plan ("IOP") Team. (Ex. 2 at ¶ 4). One such opportunity presented itself to Plaintiff through job posting E-07191. The promotional posting, for Manager of Distribution Operations at EAS level 24 (Ex. A at 10), was posted on April 24, 2008 and scheduled to close on May 9, 2009. (Ex. 2 at ¶ 4). However, USPS took the posting down on May 8, 2007 and reposted it that same day with a new scheduled closing date of May 23, 2007. (Ex. 2 at ¶ 4). The record indicates that this was done for candidate Michael J. Grubbs.[8] (Ex. 11 at 8-11). Accordingly, Grubbs,[9] Plaintiff, and thirteen (13) others filled out a written application, known as a Form 991. Plaintiff submitted her application on April 27, 2007 and she was not required to submit a second application for the repost because applicants were told "[p]revious applicants need not re-apply." (Ex. C at 2; Ex. A at 10).

Following the May 23, 2007 close of the promotion posting, a review committee comprised of three USPS employees, Ed Stelmach, Diane Smith, and Jim Dominowski, evaluated the applications. (Ex. E at 6). The review committee took into consideration each applicant's Form 991 and determined that the following five (5) individuals "best meet" the position requirements: Mark A. Caplan, Kim C. Gebrosky, Michael J. Grubbs, Plaintiff Marion L. Keefer, and Kenneth K. Pawlowski. (Ex. G). From that list, the Selecting Official, Graf, would choose the successful candidate for the position. (Ex. A at 12).

Upon receipt of the recommendations, Graf reviewed the Form 991's from all five

---

[8] Grubbs was eventually promoted to EAS 24 over four other qualified candidates.
[9] Despite the extension, Grubbs' application contained errors including an incorrect date and the position he held at the time the application was submitted.

4

applicants. (Ex. K at 6). He also conducted one-on-one interviews with the applicants between November 7, 2007 and November 21, 2007. (Ex. 4 at 7). Graf testified that his interview process consisted of questions to stimulate conversation to help give him an idea of the applicant's managerial skills, and to help him determine who would be "most likely to succeed [in the position]." (Ex. K at 9-10). The questions asked were the same for each applicant. However, although Grubbs testified that his interview lasted thirty (30) minutes, Plaintiff testified that her interview lasted only ten (10) minutes. (Ex. 2 at 10-11).

The interviews and the Form 991's were not the only criteria which Graf took into acocunt in determining which applicant would receive the promotion. Describing his process for determining the best candidate, he testified:

> [w]hen I get selected as a selecting official, the first thing I'll do is go over the Policies and Procedures. I have a book in my office that I review, and then I would go on line and review those. Then I review all the 9[9]1s. In this case, I knew all of the applicants; that does not always happen. I knew all of the applicants, so I reviewed all of the KSA's. I felt at that point, that they all met the qualifications for the position. My job then is to pick the person with the best chance of success. One of the policies under Policies and Procedure for selections, is determining how good they are with managerial abilities. So I type up my questions, the same question for all of those applicants. Then I interview them. I make notes to myself and I review those notes afterwards, and then I usually review the Policies and Procedures again. Then I review the Policies and Procedures that were local, I believe for writing up a Comparative Analysis, and then I do a draft and I go back and do it.

(Ex. E at 12-13). Thus, Graf's selection was based upon the Form 991s, the interviews, and his personal experience with each candidate. After much consideration, Selecting Official Graf chose Grubbs for the promotion. (Ex. J at 4).

In choosing Grubbs as the applicant most appropriate for the promotion, Graf noted a number of reasons for his choice. He laid out these reasons in his "Comparative Analysis Narrative," wherein he stated:

> Mr. Grubbs['] personal development has come through job experiences within

distribution operations and through volunteering for details in other operations that entailed training and learning experiences. He has also requested additional responsibilities in his various positions and he is in the ELD . . . program and the MLDP . . . program. He discussed his use of the latest data bases, such as MHTS and his success in using them for supervisory accountability and improving productivity. He is the best qualified applicant for the position. All of the applicants are acting or have acted in similar positions to the posted vacancy. All are qualified, but Mr. Grubbs demonstrated a superior commitment both to his personal development and to his organizational objectives. He has embraced the latest technology[10] and used it effectively in his operation and was able to quote numbers that supported his claims. He convinced me that he was the candidate with the best chance of succeeding in this position.

(Ex. J at 3-4) (footnote added).

Graf submitted his "Comparative Analysis Narrative" to Concurring Official Bergen. (Ex. F at 10-11). As the Concurring Official, Bergen left the promotional decision completely up to Graf. However, Bergen did ask Graf to take some time to "think about [the decision]" and to be sure he "pick[ed] the best person." (Ex. 4 at 15). After doing so, Graf informed Bergen that he had made his choice and on January 28, 2008, Plaintiff was informed that she had not been selected. (Ex. A at 18).

Plaintiff testified that at no point during her employment at USPS did she hear any comments about her gender made by either Graf or Bergen. (Ex. A at 27). In fact, when asked how she was being discriminated against because of her gender, Plaintiff failed to identify any direct evidence of discrimination. Instead, she testified that she presumed discrimination simply "[b]ecause a white male was chosen over me, and I was more qualified." (Ex. A at 24). Plaintiff claimed that she was more qualified because she had more years of experience than Grubbs. (Ex. A at 24).

Subsequent to the selection of Grubbs for the promotion, Plaintiff was awarded with the

---

[10] Grubbs had created a program that is referred to as a "productivity bank." The program was very similar to a program that was implemented by USPS. Thus, neither Grubbs nor Graf ever really utilized Grubbs' "productivity bank" after its initial implementation. (Ex. 5 at 12).

"Joe Conley Manager of the Year Award." (Ex. 2 at 12). Furthermore, in March 2010, after Grubbs' performance as Manager of Distribution Operations, Plaintiff was selected as his replacement. (Ex. 11 at 14-15). Plaintiff maintained this position until July, 2010.

### 2.     Denied participation in ELD and further "details"

Subsequent to application submissions, but prior to the decision itself, Plaintiff and three other applicants applied for participation in an "EAS Leadership Development" program ("ELD"), which USPS utilized as a factor when determining promotions. Plaintiff applied for this program via e-mail, but was not placed in the program although each of her three male counterparts was placed into the program. (Ex. 2 at 7). Plaintiff was told that there was no more room for her in the program.

In mid-July 2007, upon not being selected to participate in the ELD, Plaintiff utilized District Manager Beppler's "open door" policy. She met with Beppler to complain of being discriminated against when not selected for the ELD.[11] (Ex. 2 at 7). When Plaintiff asked Beppler why he denied her participation in the ELD, Beppler told her that Bergen had denied her participation. (Ex. 2 at 9). This was contrary to the information provided by Bergen, who stated that Beppler had denied Plaintiff's participation. When approached by Plaintiff, Bergen did not deny Beppler's account of the situation (Ex. 2 at 9), but rather spoke with her about the chain of command, and how she had utilized it improperly by going to Beppler instead of him, her immediate superior.

Plaintiff was also denied a subsequent "detail" to the IOP Team. (Ex. 2 at 10). She was told that she was not selected for the "detail" because there was again "no room" for her and that the decision was a "business decision," although the meaning of that phrase was never explained to Plaintiff. (Ex. 2 at 10). Plaintiff's male counterpart Kenneth Pawlowski, however, was

---

[11] Plaintiff does not pursue this allegation in this lawsuit.

selected to the IOP at an EAS level 24 position.[12] (Ex. 2 at 10). Plaintiff was subsequently given

a "detail" at an EAS level 19, which was below her current level, EAS Level 20. (Ex. 2 at 10).

Thus, Plaintiff was denied placement in both the ELD and IOP for EAS level 24, while her male

counterparts were given the opportunity to participate in both. Both the ELD and IOP

experiences were considered by Selecting Official Graf in determining which individual would

receive the promotion to Manager of Distribution Operations.

In April 2008, Plaintiff filed one formal EEO complaint of discrimination against USPS.

(Ex. A at 6-7). However, this was more than two months after she was denied the promotion at

issue in this case. (Ex. A at 6-7). The EEO complaint, therefore, is not the prior protected

activity to which Plaintiff refers as part of her retaliation claim. Rather, she claims that the prior

protected activity was the "meeting" she had with Beppler prior to being denied the promotion.

## II.    LEGAL ANALYSIS

### A.    Standard of Review

Summary judgment may only be granted if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law. Fed.R.Civ.P. 56(c). Rule 56 mandates the entry of summary judgment, after adequate

time for discovery and upon motion, against the party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986).

In considering a motion for summary judgment, the Court must examine the facts in a

light most favorable to the party opposing the motion. *Int'l Raw Materials, Ltd. v. Stauffer*

---

[12] Plaintiff does not pursue this allegation in this lawsuit.

*Chem. Co.*, 898 F.2d 946, 949 (3d Cir.1990). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.1987). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material when it might affect the outcome of the suit under the governing law. *Id.* Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex*, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324. Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir.1988) (*quoting Celotex*, 477 U.S. at 322).

**B.      Plaintiff's Title VII Gender Discrimination Claim**

Plaintiff avers that USPS' failure to promote her to the Manager of Distribution Operations position was the result of unlawful gender discrimination. Defendant moves for summary judgment on two bases: 1) that Plaintiff has failed to establish a prima facie case of gender discrimination, and 2) that even if she did, she has failed to carry her burden to overcome the legitimate, non-discriminatory reason for Defendant's decision not to select her for the position. (*See* Doc. No. 24 at §§ III.2. and III.3.)

A plaintiff may present either direct or indirect evidence to prove that she was

subjected to unlawful discrimination. *See Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 352 (3d Cir. 1999)(citing *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 976 (3d Cir.1998)). In an indirect-evidence case, the plaintiff must first make a prima facie showing of discrimination. *Id.* (citing *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir.1997)(en banc)). Establishing a *prima facie* case is the first of the familiar three steps set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 l.Ed.2d 668 (1973). A *prima facie* case for gender discrimination is established by showing that: (1) Plaintiff is a member of a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action despite her qualification and; (4) the circumstances give rise to an inference of unlawful discrimination, such as the position being filled by a person not within the protected class. *See Jones v. School Dist. of Phila.*, 198 F.3d 403, 410-411 (3d Cir. 1999) (citing *Jones v. School Dist. of Phila.*, 19 F. Supp. 2d 414, 418 (E.D. Pa. 1998)). The facts necessary to establish a prima facie case of discrimination under Title VII vary depending on the particular circumstances of each case. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817 n. 13.

The existence of a *prima facie* case is a question of law that must be decided by the Court. *See Sarullo v. U.S. Postal Service*, 352 F.3d 789, 797 (3d Cir. 2003). If a plaintiff cannot establish a *prima facie* case, the defendant is entitled to judgment as a matter of law. On the other hand, if a plaintiff is able to do so, the defendant must produce some evidence of a legitimate, nondiscriminatory reason for the adverse employment action. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n. 2 (3d Cir.), *cert. denied*, 522 U.S. 914, 118 S.Ct. 299, 139 L.Ed.2d 230 (1997). Once that is accomplished, the burden remains with the plaintiff to prove by a preponderance of the evidence that the proffered reason was pretextual and that unlawful discrimination was the real reason for the employment action. *See id.*

As the Court of Appeals for the Third Circuit has often noted, a major purpose of the

*prima facie* case is to eliminate the most obvious, lawful reasons for the defendant's action (i.e.,

the position that an applicant sought was not filled for economic reasons, the applicant was not

qualified, no adverse action such as failure to hire or firing was actually taken, etc.). *Pivirotto*,

191 F.3d at 352 (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253-54, 101

S.Ct. 1089, 67 L.Ed.2d 207 (1981) ("The prima facie case serves an important function in the

litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's

rejection."). In *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d

957 (1978), the Court explained the purpose of the prima facie case at length.

> The central focus of the inquiry in a case such as this is always whether the employer is treating "some people less favorably than others because of their race, color, religion, sex, or national origin." [*International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)]. The method suggested in *McDonnell Douglas* for pursuing this inquiry, however, was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination. A *prima facie* case under *McDonnell Douglas* raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. [*See Teamsters*, 431 U.S. at 358 n. 44, 97 S.Ct. 1843]. And we are willing to presume this largely because we know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting. Thus, when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not that the employer, who we generally assume acts only with some reason, based his decision on an impermissible consideration such as race.

*Id.* at 577, 98 S.Ct. 2943.

### 1. *Prima facie* **case of gender discrimination under Title VII**

Defendant's motion for summary judgment argues that Plaintiff cannot establish the

fourth element in that "she cannot meet her burden to show that her non-selection occurred under

circumstances giving rise to an inference of discrimination." (Doc. No. 24 at p. 3.) In support of

this contention, Defendant cites evidence within the record to support the notion that Plaintiff

was not the best qualified candidate. *Id*. at pp. 2-3. Defendant's argument in this regard is misplaced in that it conflates two subtle but distinct concepts: 1) the obvious, lawful reasons for the employer's decision (such as, an employer's choice not to fill a particular position based upon economic concerns); with 2) the employer's more particularized legitimate, non-discriminatory reason for making the personnel decision that it did to, in the this case, select a male employee over plaintiff. To use the vernacular employed by the Supreme Court, a *prima facie* inquiry considers whether a plaintiff is a member of a protected class who is qualified for a particular position and yet was subject to an adverse employment action despite the qualifications, and, if so, then considers whether such acts "if otherwise unexplained", are more likely than not based on consideration of impermissible factors such as gender.

In the present case, the Court finds that Plaintiff has established a *prima facie* case for gender discrimination. There is no dispute that Plaintiff (1) is a member of a protected class; (2) it has been admitted that Plaintiff, as well as the other four individuals considered for the promotion, was qualified for the promotion at issue; or (3) she was not awarded the promotion. Further, the record contains sufficient evidence to raise an inference of unlawful discrimination. There appears to be no dispute that the position was reposted, which inured to the benefit of male employee Grubbs. Furthermore, Plaintiff's male counterparts received assignments in temporary details to higher level teams, while her requests to participate were denied, and, more particular, that Grubbs' selection to such a detail was viewed favorably in the selection for the MDO position. These factors sufficiently establish an inference that male employees in general and Grubbs in particular, were treated more favorably by having opportunities to gain valuable experience that were denied Plaintiff, and, as a result, were in better positions to be promoted.

2.        **Defendant's legitimate, nondiscriminatory reason for the selection**

Because Plaintiff has sufficiently established a prima facie case, the Court turns to the

second step of analysis as set forth in *McDonnell Douglas*. This step shifts the burden of production, not persuasion, to the Defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See Jones*, 198 F.3d at 412 (citing *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc)). Defendant need only to produce enough evidence to enable a factfinder to conclude that the adverse employment action was motivated by a legitimate, nondiscriminatory purpose - a low threshold. *See Fuentes v. Perskie*, 32 F.3d 759, 763-64 (3d Cir. 1994).

Here, Defendant argues that the legitimate, nondiscriminatory reason for not awarding Plaintiff the promotion was that she was not the most qualified applicant for the specific position, as decided by Selecting Official Graf. (*See* Doc. No. 24 at 8). Defendant further argues that Selecting Official Graf based his determination upon the fact that Grubbs had, *inter alia*, the "best chance to succeed" in the position. (*See* Doc. No. 35). Based upon the uncontroverted evidentiary record, that includes Graf's testimony that he considered each applicant's Form 991s, one-on-one interviews, and his personal experience with each of the applicants in making his decision, Defendant has sufficiently set forth a legitimate, nondiscriminatory reason for not awarding the promotion to Plaintiff. (Ex. E at 10-11).

### 3. Plaintiff's burden to show pretext

Under the *McDonnell Douglas* test, the burden of production then shifts back to Plaintiff to show, by a preponderance of the evidence, that Defendant's legitimate, nondiscriminatory reason for the adverse employment action was pretextual. *Fuentes*, 32 F.3d at 763; *see Jones*, 198 F.3d at 413.

> At this point, the [C]ourt focuses on whether there is sufficient evidence from which a jury could conclude that the purported reasons for [D]efendant's adverse employment actions were in actuality a pretext for intentional [gender] discrimination. At trial, the plaintiff must convince the finder of fact "*both* that the reason was false, *and* that discrimination was the real reason."

*Jones*, 198 F.3d at 413 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)) (emphasis in original). Rejection of the employer's reason for the adverse employment action allows, but does not compel, the factfinder to find for the plaintiff. *See Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1066-67 (3d Cir. 1996).

The United States Court of Appeals for the Third Circuit has stated on numerous occasions that:

> [A] plaintiff may defeat a motion for summary judgment . . . by pointing "to some evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."

*Jones*, 198 F.3d at 413 (quoting *Fuentes*, 32 F.3d at 764; *Sheridan*, 100 F.3d at 1067). Similarly, the Third Circuit has also stated that:

> The plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent. Rather, the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence.

*Keller*, 130 F.3d at 1108-09. To satisfy this standard, Plaintiff must show that the legitimate nondiscriminatory reason for the adverse employment action was "so plainly wrong that it cannot have been the employer's real reason." *Id*. at 1109. *See Sproull v. Golden Gate National Senior Care*, No. 08-1107, 2010 U.S. Dist. LEXIS 5088, *13 (W.D. Pa. Jan. 22, 2010) (stating plaintiff must show that defendant's legitimate nondiscriminatory reason for its employment decision was "not only wrong but so plainly wrong that it should be disbelieved.")

Plaintiff sets forth a number of assertions which she believes demonstrates that USPS's legitimate, nondiscriminatory reason for its employment decision was simply a pretext for

gender discrimination. (*See* Document Nos. 31 through 31-12). In her Brief in Opposition, Plaintiff argues that: (1) the promotion opportunity was posted, pulled, and reposted so that Grubbs, the successful candidate, could submit an application; (2) Grubbs' application was fraught with errors and Graf still chose him; (3) Plaintiff was much more qualified than Grubbs because she had a number more years of experience in the field; (4) she was not given the opportunity to participate in the ELD program; (5) she was chastised by her immediate superior, Bergen, for going to District Manager Beppler with a complaint; (6) Diane Smith, a seasoned veteran and female member of the Review Board (and Plaintiff's mentor) believed Plaintiff to be a better candidate than Grubbs; (7) Graf and Grubbs had a personal friendship that extended outside of the workplace as evidenced by their having a drink after work on one occasion, on or about October 2006, approximately a year and a half years prior to the promotion decision; (8) Graf's interview with Plaintiff lasted only ten  minutes; (9) Selecting Official Graf relied heavily upon Grubbs' creation of a "productivity bank" program to track efficiency in making his selection and; (10) Grubbs was eventually replaced, due to poor performance, by Plaintiff for the position at issue. (*See* Document No. 35).

The Court finds that the record is devoid of any evidence from which a reasonable jury could find that Plaintiff's gender was a factor in Selecting Official Graf's decision to promote Grubbs.  Rather, Plaintiff relies exclusively on her own subjective opinions, theories, conclusions, and suspicions and simply disagrees with the decision of USPS.  *See Sarullo v. United States Postal Service*, 352 F.3d 789, 800 (3d Cir. 2003) (stating "Absent countervailing proof, [Plaintiff's subjective opinions] is nothing more than [Plaintiff's] personal view of [her] employer's explanation and falls far short of establishing pretext.").  When asked why she believed she was discriminated against, she responded:

A: Because a white male was chosen over me, and I was more qualified.

Q: In what way do you believe that you were more qualified for the job?

A: As clearly outlined on the 991's, I had years and years more experience as an MDO in processing than Mr. Grubbs had.

Q: And do you think that, automatically, having more years of experience means that you are more qualified for the position?

A: If you're applying for a job that requires you to have knowledge, which is what the job requires, yes.

(Ex. A at 24).

Defendant points out that Plaintiff testified that she never had any problems with Graf at any time during her employment at USPS and that her gender was never referenced during the entire application process. (Ex. A at 15). The record evidence is devoid of any facts from which a reasonable jury could find that Defendant's reason for its employment action was a pretext for discrimination. For example, Defendant admits that the promotion was posted, pulled, and reposted so that Grubbs could apply. Plaintiff failed, however, to show that this was done because of her or Grubbs' sex. (*See* Document No. 25 at ¶ 6). Plaintiff also failed to show that Grubbs' "error-filled" application was not considered by either the review committee or Selecting Official Graf. Rather, she assumes that because Grubbs' application contained errors, he must not have been qualified for the position. The errors referenced by Plaintiff are that Grubbs had an incorrect date on the application as well as the incorrect title for the position he occupied during the application process. Furthermore, although Grubbs mailed his application on the closing date of the reposting, USPS did not receive it until the day after. Selecting Official Graf believed, however, that Grubbs was the superior candidate notwithstanding the application.

Plaintiff further opines that Grubbs was less qualified than her because had never demonstrated any managerial skills, and Plaintiff had eight (8) years of experience. (Document

No. 32 at ¶ 22.1). Plaintiff has not produced evidence that USPS was required to follow

seniority rules in making the promotion decision. The evaluation of managerial skill is

inherently subjective and the Court will not second guess the wisdom of the employer's

evaluation. Similarly, in regard to her claim that she was discriminated against by not being

afforded the opportunity to participate in the ELD program, she presents no evidence that USPS

did not give her this opportunity because she is a female. Furthermore, Plaintiff's citation to

Diane Smith's opinion is entitled to little weight because Smith was not the Selecting

Official/decision-maker.

Plaintiff's assertion that Graf had a personal relationship, and thus biased towards

Grubbs, also fails to show pretext. The record itself, however, reveals that Grubbs and Graf had

social interaction only once. (Ex. 10 at 7). At most, such evidence reveals that on one occasion,

Graf and Grubbs were on friendly enough terms to meet one another outside of the workplace.

Even if Graf and Grubbs were friends, such an interaction, in and of itself, does nothing to reveal

invidious discriminatory animus on the part of Graf against females which was behind the

decision to select Grubbs. Likewise, Plaintiff's conclusion that she was discriminated against

because did not get an equal opportunity during her interview does not demonstrate pretext.

Plaintiff failed show any difference in the interview process between candidates other than the

time each interview lasted and it is undisputed that each candidate was asked the same questions.

This is not enough to show that USPS' legitimate, nondiscriminatory reason was actually pretext

for gender discrimination.

Similarly, Plaintiff misconstrues Graf's citation to the "productivity bank" as a factor for

the selection of Grubbs. Although it is true that Grubbs' "productivity bank" was never utilized

by USPS, the fact that he spent the time and effort to learn the system, and to create his own

program (no matter how similar to the one produced by USPS) demonstrates that Grubbs, in fact,

had a great deal of knowledge about the system and demonstrates leadership and initiative. There is record evidence to support Selecting Official Graf's statement that "Mr. Grubbs demonstrated a superior commitment both to his personal development and to his organizational objectives. He has embraced the latest technology and used it effectively in his operation and was able to quote numbers that supported his claims." (Ex. J at 3-4). Finally, although Plaintiff eventually received the position at issue because of Grubbs' poor performance, his subsequent performance has no bearing on the Court's determination in this case. *See Fuentes*, 32 F.3d at 756 (stating that "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.").

In sum, the Court finds that Plaintiff has simply failed to present any evidence that her gender was the "real" reason for not receiving the promotion over a similarly qualified male or that Defendant's legitimate, nondiscriminatory reason for its employment decision was not only wrong, but so plainly wrong that it should be disbelieved. Plaintiff's subjective claims do not reach the level to convince a reasonable factfinder that Defendant's nondiscriminatory reason was not the true reason for the employment action, or that discrimination was the true, underlying reason for the employment action. Accordingly, the Court will grant the Summary Judgment Motion filed by Defendant on Plaintiff's Title VII failure to promote claim.

### C. Plaintiff's Retaliation Claim

In addition to her Title VII gender discrimination claim, Plaintiff contends that her non-selection as MDO was the result of unlawful retaliation by Defendant, after she had jumped the "chain of command" and complained to District Manager Beppler about possible gender discrimination in not being selected to attend the ELD program. Title VII, 42 U.S.C. § 2000e-3(a) provides that:

18

It shall be unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice under this Subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Subchapter.

In order to state a claim for retaliation, Plaintiff must first establish a *prima facie* case. To establish a *prima facie* case under Title VII, Plaintiff must show: (1) she engaged in conduct protected by Title VII; (2) USPS took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action. *Weiler v. R&T Mechanical, Inc.*, 255 Fed. Appx. 665, 667-68 (3d Cir. 2007) (citing *Moore v. City of Phila.*, 461 F.3d 331, 341-42 (3d Cir. 2006)).

There is no dispute between the parties in terms of the first and second elements. With respect to the first element, the requirement to show a "protected activity," the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the "participation clause") and those who oppose discrimination made unlawful by Title VII (the "opposition clause"). *Slagle v. County of Clarion*, 435 F.3d 262, 266 (3d Cir.2006). "Opposition" to discrimination can take the form of "informal protests of discriminatory employment practices, including making complaints to management." *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir.2006). In this case, there is no dispute that Plaintiff met with Keppler in June of 2007 in order to discuss her concerns about not being selected for the EAS 24 level ELD detail. In moving for summary judgment, Defendant does not challenge the notion that such a complaint to management satisfied the "protected activity" element. Likewise, Defendant does not dispute that Plaintiff's non-selection for the MDO position constituted an adverse action for the purpose of satisfying the second element. *See* Doc. No. 24.

Turning to the third element, the Court finds that Plaintiff has failed to satisfy the third

prong of the test.  In reaching this conclusion, the Court must determine that a reasonable jury could make the connection between the adverse employment action and retaliatory animus.  "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Kemp v. Del Monte Foods*, No. 04-1731, 2007 U.S. Dist. LEXIS 57148 at *23 (W.D. Pa. Aug 6, 2007) (citing *Krause v. American Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997)).  The evidentiary record fails to demonstrate either.

In assessing the first factor, there must be a close temporal proximity between the protected activity and the adverse employment action.  *See Abramson v Wm. Patterson College of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001).  While the Third Circuit has not enumerated a stringent formula for what is considered to be too long of a gap between the protected activity and adverse action, courts have held that a time span of several months is too great.  *See Williams v. Phila. Hous. Auth.*, 380 F.3d 751, 760 (3d Cir.2004) (two months too long to permit an inference of causation without other evidence of retlaition); *George v. Genuine Parts Co.*, No. 04-108, 2007 U.S. Dist. LEXIS 5373 at *34-35, 2007 WL 217684 (W.D.Pa. Jan. 25.2007)(holding that while suggestiveness is highly sensitive to the facts of each case, a three-month gap "is not so close as to be unusually suggestive of retaliatory motive, especially where an obvious and unimpeached non-retaliatory motive exists.")

The summary judgment record reflects no temporal proximity, intervening antagonism, or retaliatory animus. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 284 (3d Cir. 2000). Although the adverse employment decision occurred after Plaintiff's protected activity, the United States Court of Appeals for the Third Circuit has stated that "temporal proximity alone will be insufficient to establish the necessary causal connection when the temporal relationship is

not 'unusually suggestive[.]'" *Id.* at 280. In this case, the adverse employment decision (denial of the promotion to EAS 24 in February 2008) did not occur until over seven (7) months after the alleged protected activity (Plaintiff's meeting with Beppler in July 2007) took place. *See Bailey v. Commerce Nat'l Ins. Sevs., Inc.*, 267 Fed. Appx. 167, 170 (3d Cir. 2008) (stating that four months was not unduly suggestive of a retaliatory motive). Thus, there is no unusually suggestive temporal relationship.

Furthermore, the record does not suggest that Plaintiff was the subject of any retaliatory animus, or that there were any "unusually suggestive" facts supporting her claim of retaliation. The Court can likewise find no evidence in the record that would point to any inconsistencies in the reasons set forth by USPS for why Grubbs was given the promotion over Plaintiff, or any other evidence to support the inference of causality. Although Plaintiff disagrees with USPS' reasoning behind its decision, such as Graf's claim that Grubbs displayed greater managerial skills than Plaintiff, her assertions are not supported by factual references. Graf assessed each candidate's managerial skills during their one-on-one interviews. Because Plaintiff was not present during Grubbs' interview with any of the other four (4) candidates, she has no point of reference to make the assertion that Graf's analysis of Grubbs' managerial skills was incorrect and that Grubbs' managerial skills were inadequate for the position. Any such assertion is without merit. Rather, the facts presented support USPS's nondiscriminatory reason for not promoting Plaintiff.

Causation is lacking in an additional aspect. Although the record demonsrates that Bergen knew about Plaintiff's meeting with Beppler, there is no evidence that suggests that Graf, the sole Selecting Official, knew about this meeting. (*See* Ex. 5 at 5-7). Plaintiff, therefore, failed to show that Graf knew about the meeting or that Graf's selection of Grubbs was in any way predicated upon retaliation against her. Taken together, Plaintiff fails to state a *prima facie*

case for retaliation pursuant to Title VII.

Even if Plaintiff would be able to state a *prima facie* case of retaliation, Defendant is nevertheless entitled to summary judgment on this claim because there is no evidence of pretext. Similar to Plaintiff's Title VII claims for gender discrimination, the Court finds that Plaintiff has not "demonstrated such weaknesses, implausibilities, inconsistencies, and the like in Defendant's legitimate, nondiscriminatory reasons that a fact finder could infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" *Foroozesh v. Lockheed Martin Operations Support Inc.*, No. 03-1703, 2006 U.S. Dist. LEXIS 12789 at *48 (W.D. Pa. March 24, 2006) (quoting *Fuentes*, 32 F.3d at 765). There is simply insufficient evidence within the record to conclude that Plaintiff was discriminated against because of her gender, the legitimate, nondiscriminatory reason for not awarding Plaintiff the promotion was pretext, or that USPS retaliated against her because of the meeting with Beppler. Accordingly, the Court will grant the Motion for Summary Judgment, filed by Defendant on Plaintiff's Title VII retaliation claim.

## CONCLUSION

For all of the hereinabove stated reasons, DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S AFFIDAVIT, Document No. 41, will be **DENIED,** and DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, Document No. 23, will be **GRANTED**.

An appropriate Order follows.

McVerry, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARION L. KEEFER, | ) |
| | ) |
| Plaintiff, | )    2:10-cv-537 |
| v. | ) |
| | ) |
| JOHN E. POTTER, Postmaster General of | ) |
| the United States Postal Service, | ) |
| | ) |
| Defendant. | ) |

## ORDER OF COURT

AND NOW, this 20th day of September, 2011, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED**, that

DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S AFFIDAVIT, Document No. 41, is

**DENIED** and DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, Document No. 23,

is **GRANTED**.


BY THE COURT:

s/  Terrence F. McVerry
United States District Court Judge



cc:    Joseph J. Chester
       Email: joechester@aol.com

       Christy C. Wiegand
       Email: Christy.wiegand@usdoj.gov